There is only one of two things that is true in this case. Either law enforcement had a probable cause or they did not have a probable cause. Either way, in this case, the government should lose. If there was no probable cause, then of course they could not issue a valid warrant or obtain a valid warrant. But also, they cannot use exigent circumstances as a exception to the warrant requirement, because that too requires probable cause. It is not a free-for-all catch-all where you then get to search anything and anything willy-nilly. Or, there is not probable cause, I'm sorry, there is not probable cause, so there is no warrant, no exigent circumstances. Or there is probable cause, in which case they should have gotten a warrant. There is no reason to believe that they couldn't have gotten a warrant in this case. And in fact, there is ample evidence in the record that they could have very easily obtained a warrant. But if exigent circumstances are present, then the warrant requirement would, there would be no need for a warrant. That's true. But there is no exigency here. And to the extent that there is an exigency Why wouldn't the potential for the destruction or otherwise making unavailable the phone an exigency? Because there is no reason to believe that that would have happened here. In Ramirez, the court talks about there has to be reason to believe that there is, somebody is imminently about to destroy evidence. It's not enough that it simply could happen. What we have in this case is a mere speculation that it simply could happen. Did they know at the time they asked for Mr. Shrum's phone that the young lady's phone had images erased from it or text messages erased from it? Yes and no. They had already reviewed A.S.'s phone, but they did not know that it was deleted, if it was deleted. They simply knew that A.S. had denied any such inappropriate contact or communications and they had already reviewed her phone and found nothing. So at the time that they then take Mr. Shrum's phone, they have allowed 11 hours to pass between the first initial report to Officer Youngerman at 2.05 a.m., which is then never communicated apparently to Sergeant Piper or investigated further. Nothing apparently happens to that information. Then at 10 a.m., DHS and Sergeant Piper getting together talking about things. Not until 1 o'clock p.m. do they go to Mr. Shrum's house. Then another 10 minutes pass while Sergeant Piper waits for uniformed officers to respond. Then he talks to A.S. for a good 35 to 40 minutes. Then he seizes Mr. Shrum's phone. But before he even takes Mr. Shrum's phone, he's allowing, and law enforcement who is on the scene is allowing, Mr. Shrum to move about the residence inside and outside with his phone, manipulating his phone. But they were present during that entire time though, weren't they? With him? That's correct. They were with him. The testimony is that they were with him close enough to him to prevent him from destroying anything. Like if he were to try to snap it in half, throw it against the wall, something like that. They were close enough to control that such that there is no imminent destruction of evidence. But they're not keeping track of what's he doing. Is he scrolling through Facebook? Is he deleting messages? They're allowing him to be on his phone, play with his phone without any interference from them. Which demonstrates that it's not an exigency. Because if he were so inclined to destroy evidence, the data itself on the phone, they provided him ample opportunity to do so. If it's an exigency, why allow him the opportunity to destroy the phone? That illustrates that they don't believe it's an exigency. The district courts seem to rely heavily on simply the fact that it's a phone and that it's electronic data that can be deleted very quickly. And some of our case law seems to suggest that that's a very, very strong factor. Do you think that the district court rely on that alone to determine exigency? Yes, I do. There is case law talking about cell phones being able to be wiped. They're super special and unique in that way. However, in this case, law enforcement knew that it was an Android device. And Sergeant Pfeiffer testified that once he saw that, which he could see immediately when he approached and saw the phone, and took the phone, that they had the technology and the capability to recover any information, even deleted information. So even if Mr. Schrumpf had tried to delete the data itself from the phone, Sergeant Pfeiffer knew at that time that they could recover it. And he agreed. But how does that change the exigency of needing to protect it? Just the fact that it's possible that it might be recovered? I mean, we've long allowed police from stopping someone from flushing something. Well, someone could argue, well, arguably you could find it in Yeah, that's possible. But how does that change it from being something that reasonably ought to be able to be prevented? Well, because it's different than your sewer example because it's easy. Sergeant Pfeiffer agreed that his concern for exigency was lessened at that point because he knew they could. So when they Well, anybody that knows technology knows it's not that easy. I mean, it's possible, but dealing with data and chips and electronic devices and the software involved is not a hundred percent proposition. Perhaps not 100 percent, but Sergeant Pfeiffer testified that he didn't have that same level of concern for exigency at that time because Davenport has a program where they just plug it in and get the data. And they had done so in other cases where someone had deleted the data and they still easily recovered it just by plugging it into their system. So he agreed that his concern for exigency was lessened, if not entirely diminished at that point. And they're allowing Mr. Shrum to continue to manipulate the phone. So if there is this concern for exigency that he's actually deleting data, then they should have seized the phone at that time. The fact that they didn't demonstrates that there is no created by law enforcement when they decided to approach at that point and create this scene when there was no reason to do so anyways. There's no evidence that Mr. Shrum was any the wiser to anything going on. And they themselves, the law enforcement, had allowed hours to pass. It's 2 o'clock in the morning when the initial report comes in. Then it's 10 a.m. before Pfeiffer is talking to DHS. Then 1 o'clock before they go to the house. Then they wait another 10 minutes. Then they wait another 35 to 40 minutes and allow Mr. Shrum to continue to walk around, hold his phone, manipulate his phone. As to Mr. Shrum's knowledge, I don't remember if the district court found this, but it seemed in the record that he didn't know that something was up and that he had been contacted. So isn't that enough to raise some concern with law enforcement that he had been tipped off that somebody had sort of communicated some information about his contact with the stepdaughter? That is a finding that Judge Jarvie made at the district court. He phrased it essentially that there was something in the air, some sort of scuttle about. But there was no specific information at the hearing that was elicited as to what exactly Mr. Shrum knew, if anything, what he was told or by whom, or if it is simply just this generic something's in the air, something's happening. But if we assume that he did know something, that someone communicated something to him, someone called him, said, hey, law enforcement's coming or whatever, then they should have seized the phone immediately. At the time, if there is that exigency, then they should have exercised that exigency. And the fact that they didn't and continued to allow him to move about and manipulate the phone freely, albeit next to his essentially escort, demonstrates that there is no such exigency. If he had attempted to throw it against the wall, law enforcement's in a position to stop him. But if the exigency is the possible destruction of evidence, they're allowing him to do so. And if they're allowing him to do so because they're not concerned, then there is no exigency. So if there is an exigency, then they created that by approaching him at the time that they did. But their actions and attitudes at the scene demonstrates that there is no exigency, even as it relates to the cell phone data, because Sergeant Pfeiffer agreed that they could have recovered any such information and their actions are such that Keith Shrum was allowed to continue to at that point in time, if anything, their suspicion should have been decreasing. The very beginning of the case is, hey, there's the friend told the aunt who told the mom who told Officer Youngerman this kind of grapevine story about something's going on. Then they talk to A.S. who denies everything. Then they review, by consent, A.S.'s phone and they find nothing. So at that point, if anything... Well, wouldn't that heighten their suspicion, though, if the statement was that there were these exchanges of text of which there were actual photographs, which meant that something has come off of that phone? Or could, should mean that if the photographs of text messages were indeed to be trusted? If we assume that Mr. Shrum is guilty, which they could not have done at that time, or they assume... But if they have credible testimony from, or at least representations from the young girls who had actually seen the text messages with the objectionable statements on the phone possessed by the victim, then if those are removed from her phone, if they're not there, that wouldn't seem to reduce suspicion, but heighten it. It could. The alternative explanation would be that the information that was initially reported is not credible. There is no continued investigation or corroboration like we see in cases like Meyer and Mays, where there's a year-long investigation, it's corroborated by other sources, and so on and so forth. The sole factor that they are moving on at that point is this through the grapevine kind of, I would say hearsay, but not technically hearsay, type of information. So when they are then going to investigate that, they have no further corroboration of that issue. What they have instead of evidence at that point is denial and a lack of information that they were seeking. So it would be like opening the box and not finding the drugs. One explanation is that the drug's been removed, but another explanation is that there were never drugs there and your information is bad. So if anything, their suspicion and cause for search at that point is decreasing, not heightening. And Your Honor, I would reserve the rest of my time. Thank you, Ms. Yeager. Ms. Glasco. May it please the Court, my name is Andrea Glasco, and I represent the United States in this case. To pick up where things just left off, I think that it is absolutely true that the suspicion was growing. The timeline here is very important. Officers had report during the overnight hours that there were sexual text messages being exchanged between Mr. Shrum and the minor victim. Screenshots of those messages were taken by the minor victim's minor friend children. Sgt. Piper testified at the suppression hearing that he had himself viewed copies of those screenshots that were obtained by the DHS worker. So he had himself viewed those photos, believed them to exist based on their existence of a screenshot. He then went to the home. He had first searched for Mr. Shrum and the child without success for a period of time. Eventually, they find them back at the home. They had Mr. Shrum unloading items from a vehicle, which appears consistent with the reporting that they had been camping. The minor child is not in view. They go to the home eventually when uniformed officers arrive. That's when the minor child comes out of the residence in the middle of the afternoon with wet hair and reports to officers that she had just showered. In the time that Sgt. Piper was talking to the minor victim, she in fact confirmed she had just showered. She made statements such as not wanting to get her dad in trouble, which is what she referred to Mr. Shrum as. She did show Sgt. Piper her phone, which in fact contained no messages with Mr. Shrum. All of that was in fact indicating to officers that something was going on there. Sgt. Piper testified that based upon his training and experience and the reporting going on here, he was concerned about the shower immediately upon arrival home when they had been at the home 20 to 30 minutes earlier to look for Mr. Shrum and he wasn't there. So immediately upon arriving home, the minor victim goes and showers. Based on the alleged allegation of sexual conduct, Sgt. Piper testified that in his training and experience, he was concerned that that was in fact a method of destroying evidence. Then upon viewing the minor victim's phone and seeing no messages with Mr. Shrum, he again was concerned that that had been destruction of evidence. So when they asked Mr. Shrum for his phone and obtained his phone, Sgt. Piper said initially, obviously officers don't know whether Mr. Shrum in fact has a phone, if he has a phone, what condition it's in, what kind it is. Sgt. Piper said that upon seeing and observing that Mr. Shrum's phone was an Android, his concerns about the deletion of evidence was lessened because they do have an ability to recover deleted evidence. But the distinction that he made and why he said that it was still necessary for them to seize the phone at that time is because had they left the phone in Mr. Shrum's care, he could destroy the phone or lose or otherwise dispose of the phone in such a way that they would not be able to retrieve those items. They needed to physically have the phone in order to hook it up to the machine, in order to obtain information that may be deleted. So the fact that officers... I have a question about your argument. To rule in the government's favor here and rule that this is exigency, would we be saying that so long as electronic data is involved, whether it's a cell phone or maybe an iPad or something that law enforcement thinks is on that device, is that enough? Because you can always try to destroy electronic data. Is it sort of a per se rule? Judge, I don't think that it goes that far. I think that the specific facts of this case indicate the concern about that electronic data and the destruction of that data. But I don't think it would be necessary or even this would amount to a per se rule that all electronics are always... there's going to be exigent circumstances. Here, the other factor that is to be considered is as was raised with Ms. Yeager, the defendant in fact knew that there was something going on. What was reported was that the defendant stated that he had been contacted during the night by some people about an allegation of touching. And so he certainly was aware that some information had been spread. He was aware that the minor victim's friends had gone home early from this camping trip and then someone had contacted him about this allegation. So again, it's the nature of what's being said at that time. It's the nature of what the police are observing that immediately upon arriving home, the minor victim is showering, that her text messages are deleted, then that Mr. Shrum says he was aware of this. All of that together creates the exigency that we have in this case. But I don't think it's necessary for the court to go so far as to say there's a per se rule that electronics are always going to involve exigency. I don't think that's in this record, but do the service providers, Verizon, AT&T, do they keep the records of these texts for a certain number of days or months that law enforcement can go and get there? Your Honor, I don't believe there's any information about what would be available from the service provider in this record. I think just as a matter of practice, it varies greatly from service provider to service provider. And it also depends on phones. For example, most almost nothing is able to obtain from iPhones from service providers. So it would vary based on the phone and the service provider, I believe. Then given the exigency that was presented, it was completely reasonable for the police to then seize Mr. Shrum's phone. They then promptly dealt with the situation at hand, which was ensuring the safety of the minor victim, ensuring a safety plan. As the district court found, there were some family circumstances that had arisen as a result of these allegations that were creating a situation they needed to address as far as the safety of the child and the imminent. They were also dealing with a hospital examination for the minor child. And then promptly the next morning, they obtained the search warrant for the cell phone. So again, the delay here is much less than we see in some other cases and was certainly reasonable given the nature of the case and what they needed to respond to. I have a question about the officer's interactions with Mr. Shrum, allowing him to keep the phone for a little bit and manipulate it. Was there testimony in the record that the officer, had it not been an Android phone, that he would have taken it immediately? But because it was an Android phone, he wasn't as concerned about the deletion, the manipulation, was more concerned about the destruction? Yes, generally that testimony is there. I don't believe that the Sgt. Pfeiffer that is testified specifically to the phrase, he would have taken it immediately if it was an iPhone. He certainly did testify that immediately upon retrieving the phone, he recognized it to be an Android. And Sgt. Pfeiffer testified that based on his training and experience, he then had less concern about the deletion of items manually from the phone, but he did testify then that he still had concerns about the destruction of evidence because if the phone was physically destroyed or otherwise lost, then we still would not be able to retrieve the evidence. Would you address the contention of lack of particularity in the warrant? Yes. Given the seizure of the hard drives and the computers that were not listed in the warrant? Yes, Judge. And so turning then to the particularity of the warrant, obviously the court looks at the search warrant in the totality, can consider Attachment A, given that it was incorporated, there was language of incorporation. Attachment A outlined the nature of the investigation. It outlined that the police had seized the cell phone and had found images of child pornography or at least suspected child pornography at that point, and that this was an investigation related to child exploitation. As I've analogized in my brief, I think this is a similar situation to search warrants that say something about evidence of drug trafficking. We understand what evidence is related to child exploitation. The Eighth Circuit has repeatedly recognized a correlation between child molestation and the possession of child pornography. So we understand then that what we're also worried about is digital evidence based on the information contained in Attachment A, and it was reasonable for the officers to understand that that's what the warrant was allowing them to seize. Certainly then we have the additional facts that during the execution of the search warrant, Detective Johnson is interviewing Mr. Shrum, and during that interview, which is simultaneous to the execution of the warrant, Mr. Shrum does make admissions about his possession of child pornography on a hard drive. So then with that additional information, it's certainly the government's position that the search warrant was sufficiently particular, specifically with the consideration... But if it's not, because literally it doesn't list those devices, if it's not, is there any precedent to the effect of the phone call from the officers being able to be viewed as a supplement or an amendment to the affidavit to the magistrate with the assumption that the magistrate would approve it? I mean, how does that work? Is there a case like this where the police call during a search and say, we've gotten this additional information from the defendant, look for this, get these too. Any cases like that? Judge, I'm not aware of any cases that are directly on point. It's a fairly specific set of facts, but I think that analogous cases or a way of thinking about it then is under good faith, because the magistrate did approve the search warrant initially, and then if we're considering whether the officers exceeded the scope of the search warrant, we're then still looking at a reasonable officer. And part of what's considered under the good faith analysis is the information known to officers, even if it wasn't contained in the search warrant. And so I don't think that it's considered necessarily a supplement to the magistrate, but you're considering what the officers knew and whether they were acting reasonably given the information that they knew, and given that they had a search warrant approved by a judge that said that they were allowed to search for information, any and all information and evidence related to sexual abuse and exploitation, then when they are given the specific information that Mr. Shrum has made admissions about the possession of additional child pornography on an electronic device, it's certainly reasonable that a reasonable officer would think that that is within the purview of the warrant, which is allowing them to seize evidence of child exploitation. So if it's not within the purview of the warrant, would we have to conclude that it was immediately apparent that these devices might contain evidence of a crime? I don't think so, Judge. Judge Jarvie obviously did make that finding at the district court that he thought that this was admissible under plain view, but I think it also comes under good faith, because under good faith you're also considering the reasonableness of the officer's actions, and that reasonableness is based upon the search warrant. Detective Johnson testified he is the affiant on the search warrant, and he testified that based on his training and experience, it was his belief that this language in the search warrant covered electronic devices. Certainly that doesn't just give wide latitude to say whatever an officer says they think is covered is covered, but we look at the reasonableness of an officer's actions, and so even if it was outside of the scope of the warrant initially, at the time then that they have specific information that electronic devices in the home contain additional child pornography, which is contraband, they certainly are reasonable in seizing that  Chief's question that you can't expand the warrant after the fact. Right. I completely agree with that proposition. There is not an expansion of the warrant, but I think that the actions of an officer and their assessment of what's reasonable can change, because information changes. It's an evolving situation. Wouldn't it have been appropriate to send somebody over to the magistrate with an amended affidavit and say, Your Honor, we need the warrant to be expanded to include, based on the information we've learned from the defendant, or from the accused, or from the suspect, we think this additional property is needed for our investigation? Well, Judge, I think there are always situations where officers could take additional actions. That doesn't mean they were legally required to, and I think what's important in that analysis is considering Detective Johnson's testimony that as the affiant, and as per his training and experience in the Special Victims Unit, who investigates these types of crimes, it was his impression, or his understanding, or his belief, his belief based on his training and experience, that that phrase covered electronic devices. So he did not see a need to seek an additional warrant because he believed it was covered by the warrant itself. So, in sum, it is the government's position that the facts of this case, particularly when the timing of the events is taken into consideration, certainly there were accident circumstances and probable cause to seize Mr. Shrum's cell phone initially, then that the search warrant did contain sufficient particularity, that if it is found, it did not, or if it's found that the officers exceeded the scope of the warrant, that then there is still beyond good faith, which applies, which we take then the reasonable actions of the officer, and also we have plain view given the knowledge that Mr. Shrum has made admissions about the possession of additional child pornography on electronic devices in his home. If there are no additional questions, I'll yield the remainder of my time. Your Honor, coming back to your question about increasing suspicion, if in fact the suspicion is increasing because the review of A.S.'s phone yielded no such messages, then there is a possibility that there was a misuse of the phone. Your Honor, we heard testimony from Magistrate Judge Motto at the hearing that there are 13 judges available at all times of day, every day, in Scott County. The law enforcement can and does regularly come over in the middle of the night, call them up. If they don't get an answer from this judge, they call the next one. There's 13 judges. There's no reason they shouldn't have gotten a warrant and couldn't have gotten a warrant. And there are multiple police officers on scene at that time. So we have a situation where we have increasing availability through technology to get warrants. It's easier now than ever to go get a warrant done and faster, coupled with many judges available all the time, always, and multiple officers available to do so. One of those many officers could have gone down the street to talk to the judge, or they could have called one of the other officers back at the police station, say, drop this off, go talk to the judge real quick, because they're standing by. They're in control of Mr. Shrum and the scene at that time. They've been there for approximately an hour or so by that time. So there's no reason to believe that they couldn't have, in that amount of time, even if we just look at the time period that they're on the scene, gone and gotten a warrant. That's what they're supposed to do. So to Judge Kelly's question about a per se rule, that's exactly what they're asking the court to do here. That's contrary to Fourth Amendment principles and jurisprudence generally, but also specifically the McNeely case, which is not a cell phone case, but it is a comparable situation where the Supreme Court said we're refusing a per se rule for exigent circumstances. In that case, it's blood for OWI, which is diminishing at all times. At every time a moment passes, then the BAC is decreasing in the blood, or the breath, or the blood. But in that case, the Supreme Court said, no, you don't get a per se rule. It's not a guaranteed exigency just because the blood levels are decreasing. That's more so true in cell phones, where you don't have that same kind of triggering decrease. So what they're asking you to do is say, because it's electronics, because something could happen speculatively and hypothetically, therefore, per se, we get to do whatever we want always. That's just not the law. As it relates to the question of scope of the warrant, clearly they exceeded the scope of the warrant. The particularity was not met. And to the extent they believed that it was covered, then there would have been no reason to go get that double-dip warrant that they then got. That demonstrates that they did not believe that they had a warrant that was within the scope. They exceeded that. And Leon, good faith under canon, and Leon does not save them. I've seen my time's expired, if there are no other questions. Thank you, Your Honor. Thank you, Ms. Yeager. The Court notes that you've represented your clients here today to the Criminal Justice Act, and we thank you for your participation in the program. Ma'am Clerk, I believe that completes the argued cases for today and the week. Yes, it does, Your Honor. For this panel, that being the case.